UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WAYNE AND ANITA CROSBY, ) | FILE NO. 07-4052 |
| Plaintiffs, ) | |
| ) | |
| vs. ) | COMPLAINT |
| ) | |
| BAYER CROPSCIENCE, ) | FILED |
| Defendant. ) | APR 18 2007 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now the above named Plaintiffs, by and through their attorney of record and for their causes of action against the above named Defendant, state and depose as follows:

### JURISDICTIONAL ALLEGATIONS

1. That the Plaintiffs are residents of Charles Mix County, South Dakota.

2. That the Defendant, Bayer CropScience (Bayer) is a global business with its principal business office in Monheim, Germany, and with its principal United States business headquarters in Research Triangle Park, North Carolina.

4. That diversity of citizenship exists so as to allow the above Court to have jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §1332.

5. That the amount in controversy is in excess of $75,000.00 which allows the above court to have jurisdiction over this action pursuant to 28 U.S.C. §1332.

### GENERAL ALLEGATIONS

6. That the Plaintiffs engage in a farming operation in rural Charles Mix County, South Dakota.

7. That as part of the Plaintiffs' farming operation they plant and harvest crops for purposes of selling said crops on the open markets.

8. That the Plaintiffs engage in the farming business for the purpose of making a profit.

9. That the Plaintiffs purchased corn seed from Wensman Seed Company (Wensman) to plant in their fields for the crop year of 2005.

10. That said corn seed was treated with a product known as Poncho 1250 which is designed, engineered, produced and manufactured by Bayer.

11. That the Poncho 1250 product was engineered and designed for the sole purposes of controlling the infestation of corn root worm in corn crops.

12. That the Poncho 1250 product is applied to the seed prior to packaging and at the time the seed is purchased by the farmer for planting the seed has the Poncho 1250 product already on it.

13. That the intent of the seed being treated by the Poncho 1250 product is to assure that each seed is adequately treated so as to protect the seed and the corn plant and its roots from corn root worms.

14. That the product was marketed and sold with the warranty and representation that the product would control infestations of the corn root worm.

15. That the Plaintiffs purchased the seed from Wensman which had been treated with the Poncho 1250 product which had been designed, engineered, produced and manufactured by Bayer with the full

expectation that the product would control the infestation of corn root worms in their fields.

16. That the Plaintiffs planted 265 acres of corn with the seed that had been treated with Poncho 1250.

17. That after the corn crop began to mature the Plaintiffs discovered that the Poncho 1250 had not controlled the infestations of corn root worm and that their corn crop in the 265 acres had a heavy infestation of corn root worms.

18. That the failure of the Poncho 1250 product to control the corn root worm lead to an infestation of corn root worm which devastated the corn root structure to the extent that the corn plant failed to properly produce a crop and the corn plants began falling to the ground prior to the time the Plaintiffs were able to attempt to harvest same.

19. That when the Plaintiffs attempted to harvest the corn crop in the 265 acres the harvest records in certain parts of the 265 acres of corn showed a low harvest of 0 to 5 bushels of corn per acre to a high harvest of 38 bushels per acre. The average harvest for the 265 acres of corn treated with the Poncho 1250 product was 22 bushels per acre.

20. That the average loss of crop between the 265 acres of corn treated with the Poncho 1250 product and other fields which were not treated with the Poncho 1250 product was 43 bushels per acre.

COUNT 1 - BREACH OF WARRANTY

21. That Bayer designed, engineered, produced, manufactured and sold a product that was warrantied and represented to control the

infestations of corn root worms and to protect the crop grown by a farmer who purchased said product.

22. That the label for the Poncho 1250 product represents that the product will control insects which include corn root worms.

23. That the label for the Poncho 1250 product represents that the product provides the needed insect protection without the extra work and equipment associated with soil and foliar insecticides and with fewer personal and environmental risks associated with those products.

24. That the label for the Poncho 1250 product encourages a farmer using the product to not utilize other insecticides which might control corn root worms, as the Poncho 1250 product is sufficient to do so without other chemicals.

25. That the labeling of the Poncho 1250 product and the representations made by Bayer constitutes an express warranty given by Bayer that the Plaintiffs relied upon to their detriment and damage.

26. That, in the alternative, the labeling of the Poncho 1250 product and the respresentations made by Bayer constitutes an implied warranty given by Bayer that the Plaintiffs relied upon to their detriment and damage.

27. That the warranty of the Poncho 1250 product as given by Bayer was breached by Bayer when the product failed to work as promised and as represented by the marketing and labeling of said product and otherwise.

28. That the Poncho 1250 product failed to control the corn root worms in the 265 acres of the Plaintiffs' field and as a result the

Plaintiffs suffered injury and economic losses and the Plaintiffs are entitled to recover damages from Bayer.

29. That the failure of the Poncho 1250 to control the corn root worm infestations in the Plaintiffs' 265 acres of corn constitutes a breach of warranty.

## COUNT 2 - FRAUD

30. That the Plaintiff restates and realleges all facts set forth in paragraphs numbered 1 through 29, inclusive and, in the alternative, states and alleges as follows:

31. That Bayer knew that the Poncho 1250 product did not perform to the extent and degree it was representing to the public.

32. That Bayer intentionally marketed the Poncho 1250 product to the public on the basis that the product would control corn root worm at a time when Bayer knew the product was one of the poorest performing products on the market for controlling corn root worm.

33. That Bayer willfully deceived its consumers, including, but not limited to the Plaintiffs, with intent to induce them to alter their position to their injury or risk as provided by SDCL 20-10-1.

34. That, regarding the Poncho 1250 product, Bayer's acts and conduct constituted fraud and deceit as defined by SDCL 20-10-3 in that 1) Bayer suggested a fact which it knew was not true under circumstances whereby it knew or should have known that said fact was not true; or 2) that Bayer asserted as a fact that which Bayer had no reasonable grounds for believing said fact to be true; or 3) that Bayer suppressed a fact at a time when it was bound to disclose to the

Plaintiffs and the public, or gave information regarding facts which it knew were likely to mislead the public, namely, that the Poncho 1250 product would control corn root worms in the fashion described and represented in the marketing strategies employed by Bayer when Bayer knew, or should have known, that the product would not perform as represented.

DAMAGE ALLEGATIONS

35. That as a result of the failure of the Poncho 1250 product to work as represented, the Plaintiffs suffered a loss of crops and other damages for which they are entitled to recover a money judgment from Bayer.

36. That the Plaintiffs' harvest on an average was at least 43 bushels of corn per acre lower than the corn that had not been treated with the Poncho 1250 product.

37. That 43 bushels of corn per acre for 265 acres of corn equates to a total crop loss as a result of the failure of the Poncho 1250 product of 11,395 bushels of corn.

38. That the market price for the lost corn is approximately $3.70 per bushel, which equates to $42,161.50 in lost crops by the Plaintiffs and the Plaintiffs are entitled to recover from Bayer these damages, together with interest thereon.

39. That the Plaintiffs incurred substantial costs associated with the corn crop that was damaged due to the failure of the Poncho 1250 product to work as represented. Such costs include, but are not limited to, the following:

   a. $17,225.00 for fertilizer costs ($65.00/ acre x 265 acres);

   b. $795.00 for fuel costs for planting the crop ($3.00/acre x 265 acres);

   c. $1,855.00 for fuel costs for tillage ($7.00/acre x 265 acres);

   d. $1,855.00 for fuel costs for harvesting the remainder of the crop ($7.00/acre x 265 acres);

   e. $10,600.00 for the cost of seed to plant ($40.00/acre x 265 acres); and

   f. $5,035.00 for cost of the application of chemicals ($19.00/acre x 265 acres).

   40. That the Plaintiffs are entitled to recover the aforesaid costs as damages in this action under either of the aforesaid causes of action stated above.

   41. That the Plaintiffs are entitled to recover from Bayer the cost associated with the purchase of the Poncho 1250 product in the amount of $3,840.00 under either of the aforesaid causes of action stated above.

   42. That the Plaintiffs are entitled to punitive damages under Count 2 for the fraud and deceit committed by Bayer against them and the general public in the minimum amount of $2,000,000 or such amounts as may be determined by a jury at the time of the trial of this matter.

   43. That the Plaintiffs are entitled to interest on all damages which they are entitled to recover from Bayer and which are capable of being made certain by calculation.

   44. That the Plaintiffs are entitled to recover their costs, expenses, disbursements and attorney's fees from Bayer under either of the aforesaid causes of action stated above.

7

45. That the Plaintiffs are entitled to a money judgment against the Defendant for compensatory damages, under either of the aforesaid causes of action stated above, in the minimum amount of $83,366.50 or such amount as may be determined by a jury at the time of the trial of this matter.

46. That the Plaintiffs are entitled to a money judgment against the Defendant for punitive damages under Count 2 in the minimum amount of $2,000,000.00 or such amount as may be determined by a jury at the time of the trial of this matter.

WHEREFORE, Plaintiffs pray for a money judgment against the Defendant in the minimum amount of $83,366.50 for compensatory damages under either of the causes of action set forth herein and in the minimum amount of $2,000,000.00 for punitive damages under Count 2 of this Complaint or in such other sums as may be determined by a jury at the time of trial. Further, the Plaintiffs pray that they be awarded their costs, expenses, disbursements and attorney's fees incurred in bringing this action.

Dated this ____ day of _____, 2007.

_____
TIMOTHY R. WHALEN
Whalen Law Office, P.C.
P.O. Box 127
Lake Andes, SD 57356
Telephone: 605-487-7645
One of the Attorneys for the Plaintiffs

Plaintiffs hereby demand a trial by jury on all factual issues in the above matter.

Dated this ____ day of _____, 2007.

_____
TIMOTHY R. WHALEN
Whalen Law Office, P.C.
P.O. Box 127
Lake Andes, SD 57356
Telephone: 605-487-7645
One of the Attorneys for the Plaintiffs